UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VIRGIL GRIFFIN, )
 )
        Plaintiff, )
 )
     v. ) No. 1:19-cv-04886-JRS-TAB
 )
MICHAEL MITCHEFF, et al. )
 )
        Defendants. )

**Order Granting in Part and Denying in Part
Defendants Linda Frye and Michael Mitcheff's Motion for Summary Judgment**

Plaintiff Virgil Griffin, an Indiana inmate, brought this action under 42 U.S.C. § 1983 alleging that defendants Linda Frye and Michael Mitcheff violated his Eighth Amendment rights when they discontinued his breathing treatments and retaliated against him in violation of the First Amendment after he filed grievances and a tort claim notice. Ms. Frye and Dr. Mitcheff jointly moved for summary judgment. As explained below, the motion for summary judgment, dkt. [55], is **granted in part and denied in part**.

**I. Summary Judgment Standard**

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

1

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. Facts and Background

### A. The Parties

At all times relevant to the first amended complaint, Mr. Griffin was housed at Pendleton Correctional Facility ("PCF").

Defendant Linda Frye is a registered nurse who served as the acting Health Services Administrator ("HSA") at PCF during the times relevant to Mr. Griffin's claims. Dkt. 57-4 at ¶¶ 1-2. As HSA, Ms. Frye oversaw the provision of medical services to inmates and occasionally met with inmates to discuss their concerns about medical treatment. *Id.* at ¶ 3.

Defendant Michael Mitcheff is a doctor and the Regional Medical Director for Wexford Health Services, Inc. ("Wexford") and is responsible for, among other things, identifying and

helping solve operational and clinical issues at Indiana Department of Correction facilities, including PCF. Dkt. 57-1 at ¶¶ 1-3.

**B. Mr. Griffin's Medical Treatment and Related Grievances**

At a routine chronic care visit on August 30, 2019, Dr. Talbot prescribed breathing treatments for Mr. Griffin to treat his asthma. Dkt. 57-2 at 1-4. The prescription called for Mr. Griffin to receive a breathing treatment one or two times a day, as needed, for two months. *Id.*, Dkt. 11 at 4. Dr. Talbot also gave Mr. Griffin a prescription for a metered dose inhaler. Dkt. 57-2 at 1, 4.

On September 5, 2019, Mr. Griffin submitted a request for interview ("ROI") to Ms. Frye. Dkt. 63-1 at 22. He stated that a nurse told him he could only get a breathing treatment at 1:00 p.m. even though the prescription stated he could get a breathing treatment as needed. *Id.* Ms. Frye spoke with corporate leadership and Mr. Griffin's treating medical professionals and informed Mr. Griffin that changes to the breathing treatments were "coming soon." *Id.*; *see also* dkt. 57-4 at ¶ 7.

Mr. Griffin requested, but did not receive, a breathing treatment on September 14, 2019. Dkt. 63-1 at 23. He submitted an informal grievance to Ms. Frye stating that the missed breathing treatment left him "with no relief for [his] painful condition though the doctor has made such relief available." *Id.* Ms. Frye stated she would discuss the incident with the nurse. *Id.*

A few days later, Mr. Griffin again did not receive a requested breathing treatment. *See* dkt. 63-1 at 24. When he contacted Ms. Frye about the incident, she confirmed that Mr. Griffin had been seen recently by both a medical provider and a nurse and told Mr. Griffin that the nurses get busy and that he should "have a captain or [lieutenant] call medical or just bring you over." *Id.*

On five more occasions, medical staff at PCF thwarted Mr. Griffin's attempts to obtain breathing treatments. *See* dkt. 63-1 at 25-29. Mr. Griffin informed Ms. Frye of each of these

incidents shortly after it happened. *Id.* Each time, Ms. Frye responded that she would discuss the incident with the nurses. *Id.* Twice, Ms. Frye advised Mr. Griffin that changes to the way breathing treatments are done were coming soon. Dkt. 63-1 at 25, 28. When PCF staff sought Ms. Frye's response to a formal grievance filed by Mr. Griffin, she yet again stated she would "discuss with nurses." Dkt. 57-3 at 3.

Mr. Griffin filed another ROI on October 2, 2019, informing Ms. Frye that a nurse told a correctional officer not to send Mr. Griffin to the medical unit anymore. Dkt. 63-1 at 30. Ms. Frye responded that "changes are coming soon to breathing [treatments]." *Id.*

On October 22, 2019, Mr. Griffin submitted an ROI to Ms. Frye stating that nurses told him that "the warden and/or [IDOC] placed restrictions on breathing treatments." Dkt. 63-1 at 31. Ms. Frye's response stated: "Regional Medical Director reviewed all breathing [treatments and] he discontinued them." *Id.* When Mr. Griffin filed a formal grievance about the discontinuation and PCF staff asked Ms. Frye about it, she confirmed that the "Regional Medical Director reviewed all inmates that were on breathing treatments and discontinued several of them." Dkt. 57-3 at 7. She informed PCF staff that Mr. Griffin could submit a health care request form if he wanted to discuss the discontinuation with a medical provider. *Id.*

**C. Discontinuation of Mr. Griffin's Breathing Treatments**

Sometime in October 2019, Mr. Griffin's breathing treatments were discontinued. Dkt. 11 at 5-6. At that time, many as-needed breathing treatments were stopped throughout IDOC "due to concerns that the treatment was not clinically needed or as effective as previously believed within the medical community." Dkt. 57-1 at ¶ 13. Medical staff for all IDOC facilities assessed patient need for breathing treatments based on reports from onsite clinicians and determined that most inmates did not require breathing treatments if they had access to a metered dose inhaler. *Id.* at

¶ 14. A metered dose inhaler uses the same types of medication as a breathing treatment, and medical literature indicates that approximately six puffs on a metered dose inhaler is comparable to one breathing treatment. *Id.* at ¶ 11.

Dr. Mitcheff states that he did not discontinue Mr. Griffin's breathing treatments without considering all of Mr. Griffin's medical needs. Dkt. 57-1 at ¶ 19. Rather, the decision to discontinue the breathing treatments was based on several factors, including literature within the medical community, Mr. Griffin's medical condition, an assessment of Mr. Griffin's previous asthma symptoms and treatment, and consultation with Mr. Griffin's onsite treatment providers. *Id.* at ¶¶ 19–20.

### III. Analysis

Mr. Griffin asserts that Ms. Frye and Dr. Mitcheff displayed deliberate indifference to his serious medical needs in violation of the Eighth Amendment and retaliated against him in violation of the First Amendment. Ms. Frye and Dr. Mitcheff seek summary judgment arguing that they adequately addressed Mr. Griffin's medical needs and that there is no evidence that they discontinued his breathing treatments in retaliation for the grievances and tort claim notice Mr. Griffin filed.

**A. Deliberate Indifference to a Serious Medical Need**

Because Mr. Griffin is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the

Eighth Amendment."). The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014).

"To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc). Ms. Frye and Dr. Mitcheff do not dispute that Mr. Griffin's asthma and associated symptoms constitute a serious medical condition. *See* dkt. 56 at 20.[1] Thus, the Court will focus on the second step of the inquiry—whether either Ms. Frye or Dr. Mitcheff was deliberately indifferent to Mr. Griffin's condition.

The Court must examine a prison official's subjective state of mind to determine if he or she acted with deliberate indifference. *Petties*, 836 F.3d at 728. "For a prison official's acts or omissions to constitute deliberate indifference, a plaintiff does not need to show that the official intended harm or believed that harm would occur. But showing mere negligence is not enough." *Id.* Rather, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

*1. Dr. Michael Mitcheff*

---

[1] In their brief, Ms. Frye and Dr. Mitcheff identify Mr. Griffin's serious medical need as his "injury associated with a possible stabbing." Dkt. 56 at 20. That injury relates to another case filed by Mr. Griffin. *See Griffin v. Evans, et al.*, 1:19-cv-00882-JPH-MPB. The Court nevertheless understands Ms. Frye and Dr. Mitcheff to concede that asthma is a serious medical need for purposes of summary judgment consistent with Seventh Circuit precedent. *See Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005) ("We have previously held that asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks.").

6

Mr. Griffin contends that Dr. Mitcheff demonstrated deliberate indifference to Mr. Griffin's serious medical needs by discontinuing his breathing treatments without examining him. Dkt. 11 at 8-10. Although Dr. Mitcheff asserts that he was not responsible for discontinuing all breather treatments, *see* dkt. 57-1 at ¶ 20, he also explains that he did not discontinue Mr. Griffin's breathing treatments without considering all of Mr. Griffin's medical needs and that the decision to discontinue the breathing treatments was based on several factors, including literature within the medical community, Mr. Griffin's medical condition, an assessment of his asthma symptoms and treatment, and consultation with his onsite treatment providers. *Id.* at ¶¶ 19–20.

"By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference," so "[a] doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). To overcome this deference, a plaintiff must "provide[] evidence from which a reasonable jury could conclude that the defendant didn't *honestly* believe his proffered medical explanation." *Id.*

Dr. Mitcheff is entitled to summary judgment because he has provided evidence that the decision to discontinue Mr. Griffin's breathing treatments was an exercise of professional judgment and Mr. Griffin has not presented evidence to demonstrate that Dr. Mitcheff did not believe in the medical explanation underlying the discontinuation of breathing treatments. Dr. Mitcheff states that most routine breathing treatments were discontinued in late 2019 "due to concerns that the treatment was not clinically needed or as effective as previously believed." Dkt. 57-1 at ¶ 13. According to Dr. Mitcheff, a metered dose inhaler delivers the same type of medication as a breathing treatment, and medical professionals determined that many inmates did

not require breathing treatments "as long as they had access to [a metered dose inhaler]." *Id.* at ¶¶ 11, 14. Mr. Griffin has not submitted evidence disputing these medical conclusions. Nor has Mr. Griffin presented evidence to refute that Dr. Mitcheff's decision to discontinue Mr. Griffin's breathing treatments was based on consideration of Mr. Griffin's medical needs.

Rather, Mr. Griffin's argument centers on Dr. Mitcheff's failure to conduct a physical examination before discontinuing the breathing treatments. *See* dkt. 11 at 10. Although Dr. Mitcheff did not examine Mr. Griffin, Dr. Mitcheff states that he based the decision to discontinue the breathing treatments, in part, on a review of Mr. Griffin's medical condition and an assessment of his previous asthma symptoms and treatment. Dkt. 57-1 at ¶ 19. Additionally, the decision was made after receiving "input from [Mr. Griffin's] onsite treatment providers." *Id.* The undisputed evidence shows that Dr. Mitcheff elected to discontinue Mr. Griffin's breathing treatments after evaluating his medical condition and the treatment he was receiving. There is no evidence that Dr. Mitcheff acted with a sufficiently culpable state of mind.

To the extent Mr. Griffin asserts that he was left without another method to manage his pain and suffering, dkt. 64 at 11-12, Mr. Griffin's medical records show that he had a prescription for a metered dose inhaler at the time the breathing treatments were discontinued, *see* dkt. 57-2 at 4. Although Mr. Griffin states that he did not know how to use the metered dose inhaler, dkt. 63 at 3, he has not presented evidence that Dr. Mitcheff knew this when the breathing treatments were discontinued. Without knowledge that Mr. Griffin did not know how to use the alternate method of treatment, Dr. Mitcheff could not have acted with a sufficiently culpable state of mind. *See Zaya*, 836 F.3d at 804-05 ("[A]n *inadvertent* failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain." (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976))).

8

Mr. Griffin has not presented evidence from which a reasonable jury could conclude that Dr. Mitcheff acted with a sufficiently culpable state of mind. Dr. Mitcheff therefore is entitled to judgment as a matter of law on Mr. Griffin's Eighth Amendment deliberate indifference claim.

*2. Linda Frye*

Mr. Griffin argues that Ms. Frye displayed deliberate indifference to his serious medical needs in two ways: (1) by failing to take action after Mr. Griffin filed multiple informal grievances stating that he was being denied breathing treatments, and (2) by failing to reasonably respond to his grievance about the discontinuation of his breathing treatments. *See* dkt. 11 at 9-10. "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). An inmate's correspondence to a prison official may provide sufficient knowledge of a constitutional deprivation. *Id.* at 781-82. "[O]nce an official is alerted to an excessive risk to inmate safety or health through [an inmate's] correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* at 782.

Mr. Griffin has not presented evidence that would allow a reasonable jury to conclude that Ms. Frye acted with deliberate indifference when responding to his formal grievance about the discontinuation of his breathing treatments. When Mr. Griffin filed a formal grievance concerning the discontinuation of his breathing treatments, Ms. Frye determined that the Regional Medical Director reviewed Mr. Griffin's case and discontinued his breathing treatments. *See* dkt. 63-1 at 31; dkt. 57-3 at 7. This was a reasonable response because Ms. Frye investigated the complaint and determined there was a medical reason for the action taken. *See Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (finding grievance counselor did not violate the Eighth Amendment

9

where he researched inmate's complaint, learned that medical professionals had seen and diagnosed the inmate with medical condition and determined that surgery was not required).

Additionally, Ms. Frye's response was reasonable because she could take no action to reinstitute Mr. Griffin's breathing treatments—it is undisputed that she did not have the authority to order specific medical care for Mr. Griffin. *See* dkt.57-4 at ¶ 6. Her responsibilities included ensuring that inmates at PCF "received access to the medical care that they required," dkt. 56 at 10, and when Mr. Griffin complained about his discontinued breathing treatments, medical professionals had determined that breathing treatments were not required. Because Ms. Frye's response to Mr. Griffin's complaints about the discontinuation of his breathing treatments was reasonable, she is entitled to judgment as a matter of law on this portion of Mr. Griffin's claim.

Ms. Frye is not entitled to summary judgment with respect to Mr. Griffin's claim about her responses to his informal grievances, however, because it is unclear when Mr. Griffin's breathing treatments were discontinued. Mr. Griffin first contacted Ms. Frye about a missed breathing treatment on September 5, 2019. Dkt. 63-1 at 22. Ms. Frye's response—that changes to breathing treatments were "coming soon"—indicates that she knew medical officials were reviewing Mr. Griffin's breathing treatments. *Id.*; *see also* dkt. 57-4 at ¶ 7 ("Based on my communication with corporate leadership and treating medical professionals for the facility, I advised [Mr. Griffin] that changes to the way breathing treatments were being administered at the facility were coming soon.").

But, there is no definitive evidence that, at the time of Mr. Griffin's informal complaints, medical professionals had reviewed Mr. Griffin's medical records and determined that breathing treatments were unnecessary. As of August 30, 2019, Mr. Griffin had a valid prescription for breathing treatments. *See* dkt. 57-2 at 1-4. It is undisputed that Ms. Frye was responsible for

supervising "the provision of medical services at the facility." Dkt. 57-4 at ¶ 3. If Mr. Griffin's prescription had not been discontinued, and he continued to complain of chest pains resulting from missed breathing treatments, a reasonable jury might conclude that Ms. Frye's repeated statements that changes were coming soon and that she would speak to the nurses amounted to "turn[ing] a blind eye" to the potentially unconstitutional conduct of denying prescribed medical treatment. *See Vance*, 97 F.3d at 993. Summary judgment on Mr. Griffin's claim that Ms. Frye violated the Eighth Amendment by failing to reasonably respond to his informal grievances about missed breathing treatments must be denied.[2]

The Court recognizes the tension between its conclusions that (1) a reasonable jury might find Ms. Frye deliberately indifferent for failing to ensure that Mr. Griffin received breathing treatments but (2) a reasonable jury could not find Dr. Mitcheff deliberately indifferent for eliminating the breathing treatments altogether. The difference is that Dr. Mitcheff has provided unrebutted evidence that he exercised his own professional judgment when deciding to discontinue the breathing treatments, while Ms. Frye could not exercise such judgment and has provided no evidence that she relied on Dr. Mitcheff's (or any other medical provider's) professional judgment, beyond her insufficient-at-this stage unadorned pronouncements that changes were coming soon, when she responded to Mr. Griffin's informal complaints.

This by no means compels the conclusion that Ms. Frye was deliberately indifferent to Mr. Griffin's serious medical needs. Rather, given the limited record before the Court on summary judgment about what Ms. Frye knew regarding the need for breathing treatments and any

---

[2] In his response to the motion for summary judgment, Mr. Griffin argues that Ms. Frye was deliberately indifferent to his serious medical needs because she delayed his receipt of medical care after the discontinuation of his breathing treatments in October 2019. *See* dkt. 64 at 12-13. The Court will not address this claim, however, because it was not included in Mr. Griffin's First Amended Complaint. *See* dkt. 11.

contemplated changes thereto, and what she did or did not do or say, and why, a jury might draw such a conclusion. The Court merely concludes that Mr. Griffin has come forward with enough evidence to survive summary judgment. Further elucidation of the underlying facts at trial may well support a conclusion in favor of Ms. Frye.

**B. Retaliation**

Mr. Griffin asserts that Ms. Frye and Dr. Mitcheff retaliated against him in violation of the First Amendment by discontinuing his breathing treatments after he filed grievances and a tort claim notice. Dkt. 11 at 5-6, 8, 10. To prevail on his First Amendment retaliation claim, Mr. Griffin must show that "he engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v. Groot*, 867 F.3d 79, 803 (7th Cir. 2017); *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017).

Ms. Frye and Dr. Mitcheff cannot dispute that filing a grievance or tort claim notice is activity protected by the First Amendment. *See Perez*, 792 F.3d at 783 (7th Cir. 2015) ("[F]iling a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim."). Additionally, the Court assumes for purposes of summary judgment that the discontinuation of a prescribed medical treatment would deter a person of ordinary firmness from engaging in future protected activity. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) ("We apply an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011))).

At summary judgment, the burden of proof on whether the protected activity was a motivating factor for the alleged retaliation "is split between the parties." *Kidwell v. Eisenhauer*,

12

679 F.3d 957, 965 (7th Cir. 2012). Initially, a plaintiff "must produce evidence that his speech was at least a motivating factor . . . of the [] decision to take retaliatory action against him" *Id.* The burden then shifts to the defendant "to rebut the causal inference raised by the plaintiff's evidence." *Id.* If the defendant rebuts the causal inference by demonstrating a legitimate reason for the alleged retaliatory action, "the plaintiff must present evidence that the defendant's proffered explanation is pretextual." *Lalvani v. Cook County, Ill.*, 269 F.3d 785, 790 (7th Cir. 2001).

"To show that protected conduct was a motivating factor . . ., a plaintiff must demonstrate a causal connection between the conduct and the [] action." *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019). "If the defendant was aware of the conduct, a causal connection can then be demonstrated by suspicious timing alone only when the [] action follows on the close heels of protected expression. *Id.*; *see also Lalvani*, 269 F.3d at 790.

Mr. Griffin's First Amendment retaliation claim against Ms. Frye fails because he has not established that she took action that would deter future protected activity. It is undisputed that Ms. Frye was not responsible for discontinuing Mr. Griffin's breathing treatments. *See* dkt. 63 at 2; dkt. 63-1 at 31; *see also* dkt. 57-4 at ¶ 6. It is also undisputed that Ms. Frye had no authority to reinstate the discontinued breathing treatments. Dkt. 57-4 at ¶ 6. Ms. Frye is thus entitled to summary judgment on this claim.

Mr. Griffin's First Amendment retaliation claim against Dr. Mitcheff fails because Mr. Griffin has demonstrated suspicious timing but has not established that Dr. Mitcheff knew of Mr. Griffin's protected activity. *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (stating that "vague and confusing testimony" that the plaintiff named the defendant at some point in a grievance with no evidence that the defendant even knew about it was not enough to support a retaliation claim); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 582 (7th Cir. 2011) ("For a

viable case, Wackett must prove defendants' knowledge of the protected speech to establish retaliation."). It is undisputed that Mr. Griffin's breathing treatments were discontinued shortly after he filed grievances related to missed breathing treatments. But Mr. Griffin addressed all of his informal grievances to Ms. Frye, dkt. 63-1 at 22-31, and he sent the tort claim notice to Ms. Frye, not Dr. Mitcheff, dkt. 11 at 5. Mr. Griffin cannot survive summary judgment on suspicious timing alone. *See Kidwell*, 679 F.3d at 966 (recognizing that suspicious timing alone is rarely sufficient to survive summary judgment because "[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment" (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)).

Because Mr. Griffin has not shown that Ms. Frye was responsible for discontinuing his breathing treatments or that his protected activity was a motivating factor for that decision, Ms. Frye and Dr. Mitcheff are entitled to judgment as a matter of law on Mr. Griffin's First Amendment retaliation claims. The motion for summary judgment is **granted** with respect to these claims.

### IV. Conclusion

Mr. Griffin's motion to submit additional evidence, dkt. [70], is **granted**.

For the reasons discussed above, defendants Lyn Fry and Michael Mitcheff's motion for summary judgment, dkt. [55], is **granted in part and denied in part**. It is **granted** with respect to Mr. Griffin's First Amendment retaliation claims against both Ms. Frye and Dr. Mitcheff, Mr. Griffin's Eighth Amendment deliberate indifference claim against Dr. Mitcheff, and Mr. Griffin's Eighth Amendment deliberate indifference claim challenging Ms. Frye's response to his grievance about the discontinuation of his breathing treatments. Those claims are **dismissed with prejudice**. The motion for summary judgment is **denied** with respect to Mr. Griffin's Eighth Amendment deliberate indifference claim based on Ms. Frye's responses to the grievances about Mr. Griffin's

14

missed breathing treatments. No partial judgment shall issue at this time. The **clerk is directed** to terminate Michael Mitcheff as a defendant on the docket.

Mr. Griffin's surviving claim against Ms. Frye will be resolved by settlement or trial. It is the Court's preference that Mr. Griffin receive the assistance of counsel for settlement and/or trial. Therefore, Mr. Griffin shall have **through July 20, 2021,** to file a motion for assistance with recruiting counsel. If Mr. Griffin does not file a motion for assistance with recruiting counsel by the deadline, the Court will assume that he does not want the assistance of counsel and proceed. The **clerk is directed** to include a copy of the form Motion for Assistance with Recruiting Counsel with Mr. Griffin's copy of this Order.

The **clerk is directed** to update the docket to reflect that "Lyn Fry" is Linda Frye.

**IT IS SO ORDERED.**

Date: 7/16/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

VIRGIL GRIFFIN
998996
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com

Margo Tucker
INDIANA ATTORNEY GENERAL
margo.tucker@atg.in.gov